IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br>SPORTS AUTHORITY HOLDINGS, INC.,<br>et al.,<br><br>       Debtors. | )<br>) Bank. No. 16-10527 (MFW)<br>)<br>)<br>) |

| | |
|---|---|
| ASICS AMERICA CORPORATION<br><br>       Appellant,<br><br>       v.<br><br>SPORTS AUTHORITY HOLDINGS, INC.,<br>et al.,<br><br>       Appellees. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 16-386-SLR<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM**

At Wilmington this 27th day of May, 2016, having reviewed the emergency motion for stay pending appeal filed by ASICS America Corporation ("ASICS") and the papers filed in connection therewith, and having considered the representations of the parties during the teleconference held on May 25, 2016, the court's decision of May 26, 2016 is based on the following reasoning:

1. **Standard of review.**  A party seeking a stay pending appeal must prove, by clear and satisfactory evidence, that (a) it is likely to prevail on the merits of its appeal; (b) it will suffer irreparable injury absent a stay; (c) a stay will not cause substantial harm to other interested parties; and (d) a stay will not harm the public interest.  *See Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).  Although none of the above factors is determinative, courts rarely exercise their

discretion in favor of a moving party who has failed to demonstrate a likelihood of success on the merits or irreparable harm. With respect to the former, a movant must demonstrate that it has "a substantial issue to raise on appeal." *In re Countrywide Home Loans, Inc.*, 387 B.R. 467, 480 (Bankr. W.D. Pa. 2008). With respect to the latter, equitable mootness of an appeal, without more, does not constitute irreparable harm. *See In re Global Home Products LLC*, Civ. No. 06–508–JJF, 2006 WL 2381918 (D. Del. Aug. 17, 2006).

2. **Background.** ASICS is an athletics company, with its primary assets being its production of sports equipment and apparel. Sports Authority Inc. ("Sports Authority") is a retailer for athletic products. On or about March 17, 2015, Sports Authority entered into a consignment agreement to sell ASICS' merchandise. ASICS consigned ASICS-branded athletic apparel to Sports Authority with a cost value represented by Sports Authority of no less than $13,333,592. Sports Authority enters into relationships with consignment vendors, which allows it to receive and resell a wide range of popular goods in its stores without the need to commit working capital up front to cover the cost of selling such inventory. Sports Authority stores, maintains, and insures the consigned goods at its own expense. It relies on consigned goods to provide a wide selection of goods in order to meet customers' needs and drive customer traffic.

3. On March 2, 2016, Sports Authority, as debtor-in-possession, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Concurrent with the commencement of the Chapter 11 cases, Sports Authority filed a motion to approve

2

GOB sales[1] at approximately 142 of its stores, including the one located on Concord

Pike in Wilmington, Delaware.  The GOB sales motion was approved on an interim

basis on March 3, 2016, and on a final basis on May 3, 2016.  Since March 3, 2016,

Sports Authority has conducted the GOB sales subject to the GOB sales motion, which

sales have included the sale of ASICS branded products, some of which were part of

the Sports Authority inventory and some of which were prepetition consigned goods.

(D.I. 15; D.I. 16; D.I. 18, ex. 5)

4.  Also as part of the first day motions filed by Sports Authority was a

Consignment Motion.  On March 11, 2016, the bankruptcy court entered an interim

order detailing the sale of consigned goods, including the following provision:

> Upon the filing of a Consignment Challenge, absent written
> consent of the Consignment Vendor, the Debtors shall
> immediately (i) cease, desist, and refrain from selling any of
> the Consignment Vendor's Prepetition Consigned Goods; and
> (ii) segregate and account to the Consigned Vendor for all
> remaining Consigned Vendor's Prepetition Consigned Goods.

(Bankr. Civ. No. 16-10527, D.I. 278 at ¶ 6)  The above directive is consistent with Third

Circuit precedent.  *See, e.g., SLW Capital, LLC v. Mansaray-Ruffin*, 530 F.3d 230 (3d

Cir. 2008); *In re Whitehall Jewelers,* 2008 WL 2951974 (Bankr. D. Del. July 28, 2008).

On that same date, ASICS reconfirmed by letter with Sports Authority that it did not

consent to the sale of ASICS consigned property.  On March 15, 2016, Sports Authority

filed a "Consignment Challenge" against ASICS by initiating an adversary proceeding,

consistent with the above case law.

5.  On April 6, 2016, the bankruptcy court entered a supplemental order, which

---

[1]Going out of business sales.

3

permitted Sports Authority to sell the prepetition consigned goods upon vendor consent, with vendor consent being defined as "[a] Consignment Agreement that was not terminated prior to the Petition Date. . . . To the extent that any of the Debtors are a party to a Consignment Agreement that was terminated prior to the Petition Date, the Debtors shall comply with applicable law." (D.I. 18, ex. 3 at ¶¶ 3, 4)

6. The hearing on the final order was held on May 3, 2016. At the hearing, the bankruptcy court confirmed that Federal Rule of Bankruptcy Procedure 7001 requires an adversary proceeding to determine title to goods and priority of liens. The bankruptcy court, therefore, declined to hear evidence on issues relating to interests in the consigned goods, including ASICS' "disputed termination" and whether Sports Authority could continue to sell ASICS products. In sum, although the bankruptcy court recognized the need for a determination through an adversary proceeding, that court decided to resolve ASICS' challenge post-GOB sales in the context of a motion practice in the adversary.[2]

7. **Analysis.** As to the likelihood of success, it is not evident that ASICS effectively terminated its consignment agreement with Sports Authority pre-petition.[3]

---

[2]On May 13, 2016, ASICS filed a motion for preliminary injunction in the adversary, which will be heard by the bankruptcy court on June 28, 2016.

[3]The parties disagree on the applicable law governing the termination. ASICS asserts that the termination is governed by bailment law, pursuant to which "the Debtors were in unlawful possession of the ASICS Property and such property was not property of the estates." (D.I. 2 at 20-21, citing *In re Valley Media, Inc.*, 279 B.R. 105, 142-143 (Bankr. D. Del. 2002) (debtors have no rights in nor authority to sell inventory consigned under terminated agreements)) Sports Authority states that ASICS' alleged termination . . . is the subject of a pending adversary proceeding" and relies on Articles 2 and 9 of the Uniform Commercial Code to argue that the consignment agreement was not terminated. (D.I. 15 at 3-4)

4

Nevertheless, by allowing the GOB sales to go forward without a determination of title, the bankruptcy court failed to follow the precedent noted above.  This factor weighs in favor of ASICS.

8. ASICS' allegations of irreparable harm, however, are less than compelling. By ASICS' own admission, a request of monetary damages rarely warrants the imposition of a stay pending appeal.  (D.I. 2 at ¶ 78)  Moreover, the fact that the bankruptcy court has the ability to fashion monetary relief at a later date calls into doubt ASICS' claim of irreparable harm.  *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).  ASICS products have been sold at a discounted price since March 2, 2016.  The decision to wait until the eve of the Memorial Day sale to file a stay motion also casts doubt on ASICS' claim of harm to its brand.  Similarly, ASICS' refusal to expedite the schedule for the adversary proceedings cuts against its request for an emergency motion.

9. Conversely, the harm to Sports Authority is irreparable.  Memorial Day weekend is a major shopping holiday and a stay would be greatly disruptive to Sports Authority's operations at a critical time.  Significantly, a stay would materially alter the agreement signed by the Liquidating Agent who anticipated ASICS-brand goods would be included as part of a Memorial Day sale.  (D.I. 13 at 4)  Creating such a drastic change at such a late time would create an unanticipated burden for Sports Authority employees and possibly affect the sale of other products.

10. The balance of harms weighs in favor of Sports Authority.  The public interest is largely neutral.

11. **Conclusion.** For the foregoing reasons, ASICS' stay motion is denied. An order has issued.

_____
United States District Judge